# Hagy *v.* Hagy, Appellant.

*Divorce—Adultery—Evidence—Sufficiency.*

Where, in an action for divorce on the ground of adultery, there is but one witness in support of the charge, and the contradictions of other witnesses, and improbabilities of the case created such a doubt of the truth of the charge, as to deprive it of convincing weight, a decree granting a divorce will be reversed.

Argued December 17, 1920. Appeal, No. 300, Oct. T., 1920, by respondent, from decree of C. P. No. 3, Phila. Co., Dec. T., 1919, No. 140, granting a divorce in the case of Albert C. Hagy v. Nettie Hagy. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Libel in divorce. Before FERGUSON, J.

The facts are stated in the opinion of the Superior Court.

The case was referred to Francis J. Walsh, Esq., as master, who recommended a divorce.

On exceptions to the master's report the court overruled the exceptions and granted a divorce. Respondent appealed.

*Error assigned* was the decree of the court.

288, (1921).]    Arguments—Opinion of the Court.)
  D. J. Dolan, for appellant.

  Bryan A. Herms, for appellee.

OPINION BY HENDERSON, J., March 5, 1921:

This is an action for a divorce. The plaintiff charges his wife with adultery. The latter is a deaf mute. The testimony of a single witness, the plaintiff's sister, is relied on to establish the charge. A single act of adultery was referred to by the witness. She was employed as a cigarmaker, and for a month or two had lived at the home of the plaintiff. They occupied rooms in a tenement house. There was one bedroom occupied by the plaintiff and his wife, and the sister slept on a couch in the living room. She testified that on the 2d or 3d day of July, 1918, she came home from her place of work, as she was in the habit of doing, about three o'clock in the afternoon; that she went into the living room and from there to the bedroom door which she found locked. There was a key, however, in a closet in the hall with which she opened the bedroom door and discovered the appellant in bed with a man who, she afterward learned, was named Ligon. She returned to the living room and remained until Mrs. Hagy and Ligon came there from the bedroom. They engaged in conversation until the husband returned about half past five. Mrs. Hagy prepared for supper, and the plaintiff invited Ligon to remain and eat with them. Ligon was a deaf mute. He lived in a remote state and was in attendance at a convention of deaf mutes held at the Hotel Adelphia during the first week of July. It does not appear from the testimony offered by the libellant where his wife became acquainted with Ligon. The sister did not communicate her knowledge of the occurrence to her brother until more than a year thereafter, and after the libel had been filed. The libellant and his sister could both hear and speak, although they were children of mute parents. The only other evidence bearing

on the case in support of the action was that of a deaf mute named Porter who testified that he was at the apartment of the plaintiff's at one time when he saw Ligon coming from a bedroom and that he was putting on his coat. It does not appear, however, when this was, nor whether other persons were in the room; he did not go into the room.

The story of the sister, Bessie Hagy, is wholly denied by the respondent in all of its details. She testified that there was but one key to the bedroom door, and that the witness for the plaintiff had not entered the room in the manner described. She further testified that she was employed as a dressmaker by Caplan & Co., at the corner of 9th and Chestnut streets, in the city; that she worked there every day in the first week of July except the fourth day when the place of business was closed; that she worked until five o'clock in the evening, and that she was not at her home at the time stated by Bessie Hagy. It was also shown that she was introduced to Ligon late in the afternoon of the 4th of July, at Mt. Airy where she and her husband attended a picnic of deaf mutes. Several witnesses were called who worked with the respondent at Caplan's who testified that she was at work all day on the 2d and 3d days of July, 1918. One of the witnesses was her sister who sat next to her; another was the cashier who went out with her. There was also offered in evidence the account of her wages for that week, and the testimony of witnesses to show that it would have been necessary for her to work full time every day of the week except the fourth to earn the wages paid her. The registry of visitors at Girard College was offered to show that Ligon was a visitor there on July 3d. Evidence was introduced to the effect that he came there with other deaf mutes about two o'clock on that day and remained until about four when he went with one of the witnesses who was entertaining him to the hotel. He was in company with Ligon all of the

afternoon of July 3d. The same witness was in company with Ligon on July 2d. They attended the convention both in the forenoon and afternoon and a night session as well. The witness testified directly that Ligon attended the convention on the afternoon of July 2d. The learned master recommended a decree in favor of the libellant and the decree was entered without an opinion by the court. An examination of the evidence brings us to a different conclusion from that reported by the master. There was practically no corroboration of the testimony of Bessie Hagy. Her story is not so convincing as to clearly establish the plaintiff's case. Her conduct in continuing in the company of the parties during the latter part of the afternoon when the offense is said to have been committed; her failure to inform her brother as to what occurred for more than a year, gives a suspicious complexion to the evidence. Her explanation that she did not want to disturb the harmony of the family may be correct, but the story recited has not such convincing weight in the face of the contradictory evidence as to warrant a finding in favor of the libellant. The master takes no account of the evidence tending to show that Ligon was in another place at the time fixed by the libellant's witness. This evidence was important and supports the denial by the respondent. The evidence as to her presence at the place of her employment is entitled to greater consideration than that accorded to it by the master. It is true the definite recollection of the witnesses, who testified as to the presence of the respondent at her working place on the days referred to, may be open to question because of the lapse of time, but they testified positively; they were so situated as to have an opportunity to know, and their credit cannot be wholly disregarded as it is not improbable. The other circumstance is of definite weight that she received her wages for full time for the days, on one of which it is said this act was committed. As she lived several miles from her working place, it is

evident she must have been absent for a half day, if the statement of Bessie Hagy is correct, and this loss of time would probably be apparent in her pay check. Moreover, there is no explanation of the acquaintance of the respondent and Ligon so far as may be ascertained from the testimony. He was a stranger in the city—he came there to attend the convention. It is not shown that Mrs. Hagy was at the convention, or that she had an opportunity to become acquainted with him on or before the second of July. The contradictions and improbabilities of the case were not given due weight by the master. We think they are sufficient to create such doubt as to the statement of the plaintiff's witness, as to require a reversal of the decree.

The decree is reversed at the cost of the libellant.